COURT OF APPEALS OF VIRGINIA

**PUBLISHED**

Present:   Judges Athey, Callins and Frucci
Argued at Salem, Virginia


JUSTIN RAY REED

                                                              OPINION BY
v.        Record No. 0231-24-3                   JUDGE DOMINIQUE A. CALLINS
                                                              JULY 1, 2025

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF WYTHE COUNTY
Josiah T. Showalter, Jr., Judge

Thomas M. Jackson, Jr.; Michael J. Barbour (The Jackson Law
Group, PLLC; Barbour and Simpkins, on briefs), for appellant.

Melanie D. Thompson, Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


Justin Ray Reed appeals his felony convictions of possession of a firearm on school

property in violation of Code § 18.2-308.1(B) and brandishing a firearm in violation of Code

§ 18.2-282(A).  Reed challenges the sufficiency of the evidence to sustain his convictions.

Specifically, Reed contends that the evidence failed to establish that he possessed a gun while on

school property as contemplated under Code § 18.2-308.1(B) and failed to establish that he handled

a firearm in any manner violative of Code § 18.2-282(A).  For the following reasons, we affirm the

trial court's judgment.

BACKGROUND[1]

Fort Chiswell High School and Fort Chiswell Middle School are located side-by-side on U.S. Highway 52 (also known as Fort Chiswell Road) in Wythe County, Virginia. Abutting U.S. Highway 52 and directly in front of the high school is an approximately 110-foot-long grassy ditch line, which is property of the Commonwealth of Virginia.

At around 11:30 a.m. on February 17, 2023, a parent entered the high school office and reported an individual with two firearms "at the old gas station at the corner" near the school. Michael Andrew Souma, Jr., the high school's principal, went outside and saw the described individual "at the old gas station." Principal Souma called Sergeant Donald W. Vaught, the high school resource officer and a member of the Wythe County Sheriff's Office.

Sergeant Vaught, who was not at the school,[2] advised dispatch to notify officers closer to the school of the suspicious armed individual. Upon his arrival at the school, Sergeant Vaught observed the described individual crossing the road just north of the school property. Soon, another officer, Deputy Goins, joined Sergeant Vaught, and the two approached the individual with the firearms. Deputy Goins recognized the individual and identified him as Reed.

The deputies observed that Reed carried two firearms—one AR-15 styled rifle "slung across his back with the strap in the front across his chest," and one "Sig Sau[e]r kind of goldish yellow pistol" in a holster on his right hip. Reed did not respond to the deputies' attempt to

---

[1] "[W]e review the evidence in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Commonwealth v. Barney*, 302 Va. 84, 96 (2023) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 514 (2003)). "Viewing the record through this evidentiary prism requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Id.* at 97 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 323-24 (2018) (per curiam)). "This deferential principle" applies to issues of witness credibility and the factfinder's interpretation of all the evidence. *Id.*

[2] We refer to "the school" as the property encompassing both the middle and high schools.

speak to him, but continued pushing his bicycle down the road, away from the school. Sergeant Vaught later testified that because they did not encounter Reed on school property or otherwise "doing anything illegal," the deputies left.

A few hours later the same day, as a pep rally took place inside the high school gymnasium, Sergeant Vaught received another report of a man with a firearm "on the front lawn of the school property." He alerted Principal Souma and the two went together to the front entrance of the high school to look for Reed. Sergeant Vaught spotted Reed "to the north of the school," in the parking lot of "the old service station" across the street from the school "at the 94, [U.S. Highway] 52 intersection area." Although school release was scheduled for 3:15 p.m., the observations of Reed visibly armed and so close to the school prompted preparation for a delayed release. The school buses were rerouted to another intersection. Additionally, a nearby Head Start program delayed its dismissal as law enforcement used the facility parking lot as a "staging area."

Meanwhile, Sergeant Vaught and Deputy Goins crossed the street to confront Reed. The deputies "activated [their] blue lights via [the] PA system and patrol car," identified themselves as law enforcement and told Reed that he needed to stop, to show his hands, and to "place his weapons on the ground." Reed initially continued walking, although "[a]t one point he put [his hands] out." At an intersection some distance from the school, Reed finally heeded the deputies' commands to stop and turn towards them. By that time, several officers—including the chief deputy and members of the sheriff's "Tact Team," outfitted in tactical gear—had joined the assemblage. The officers ultimately disarmed and arrested Reed, physically taking him to the ground. As they did so, Reed stated, "I was trying to prove a point, but I guess I f***ed up." Law enforcement recovered two firearms from Reed's person, each containing a "round chambered" and "multiple rounds in each magazine."

A grand jury indicted Reed on two counts of possession of a firearm on school property in violation of Code § 18.2-308.1 and two counts of brandishing a firearm on school property in violation of Code § 18.2-282. Reed was also charged with one misdemeanor count of disorderly conduct in violation of Code § 18.2-415.[3]

At a bench trial, the prosecution called several witnesses. Among other things, Sergeant Vaught testified that in the afternoon he received a call that informed him that Reed was "with the gun . . . and on the front lawn of the school property." Moreover, a surveillance recording he and Principal Souma watched the morning after Reed's arrest captured activity "in the front area of the Fort Chiswell High School and Middle Schools" when "[l]ooking at Route 52, and the bus lane." Sergeant Vaught testified that in the surveillance recording Reed can be observed "walking in front of the school" and "enter[ing] the property."

Joshua Owen Henley, who was driving a rescue ambulance that day, testified that he saw Reed walking with the firearms. Thinking it odd to see an individual walking with firearms near a school and aware that students would be released shortly, Henley parked the ambulance and continued watching Reed. Henley testified that he saw Reed walking "in the ditch line until he got to the first inlet to the high school," and then "in the initial driveway of the school . . . on the walkway to the school." When asked again about Reed's location, Henley testified:

> From the initial time I saw him, he had not yet crossed the property line. . . . [T]here was a fence line that runs directly [perpendicular] with the road and he was not at that point just yet he was not it. But once I had turned around[,] he had passed that property line with the [marked-by-the-fence line] so he was already past that point and I had stopped in the intersection to see . . . he kept walking towards the high school and once he got to the inlet for the first road that's [when] I passed him.

Later, Henley saw Reed "walking on the site in front of the school."

---

[3] Reed's disorderly conduct conviction is not at issue in this appeal. Reed only challenges the sufficiency of the evidence for the two felony charges.

Moreover, Henley stated that, although he did not see Reed reach for "that AR 15 at all," he "couldn't be so for sure . . . if [Reed] was resting his hand on the side arm on his side. I could not tell you that for exactly sure. But, I did not see him have his hands on the guns at the time." So Henley "staged" in the parking lot, prepared to tackle Reed if he walked further toward the school or raised a firearm.

Principal Souma testified that when he left the pep rally to respond to Sergeant Vaught, he spotted Reed "in that grassy area of the school where it falls down off of the main area down there." According to Principal Souma, Reed "was . . . on the school property. And we, well[,] we maintain the grass area down in that area." Principal Souma explained that the school custodian cuts the grass, weeds, and removes the snow in the grassy ditch line area. He also explained that the school had signs in that area "all the way down to" the road, including a blank mobile "Fort Chiswell FFA" marquee and temporary school signs advertising the yearbook and celebrating individual students. On cross-examination, Principal Souma admitted that he did not know where the actual boundary line between the school's property and Commonwealth's property fell, but that witnesses present that day "pretty much agreed that the person walking down the side that day was walking in the ditch line."

Reed moved to strike the Commonwealth's evidence, arguing that the evidence failed to establish that he possessed the firearms on school property, as "not one witness" could testify to the boundary lines between the property of the school and that of the Commonwealth. Reed also argued that his conduct in merely open-carrying his firearms did not constitute "brandishing" under the statute. The Commonwealth responded that the evidence demonstrated that Reed was in fact on school property. The trial court denied Reed's motion.

Reed called two witnesses on his behalf. John Stanley Clement, a surveyor from Fork Mountain Survey, testified that the ditch line where Reed was seen walking was the property of

- 5 -

the Commonwealth, and affirmed that most of the school signs Principal Souma identified were placed within the bounds of the Commonwealth's property. Clement acknowledged that the "big marquee sign" that contained the school name and was affixed to the ground stood mostly on school property but that "[a] small amount of it" stood on the Commonwealth's property.

Rick Skeens, transportation director for Wythe County Public Schools, testified that he saw Reed walking toward the school, in front of the school, "cross[] over and then came right back" in Skeens's direction.[4] Skeens became concerned when he "saw the gentleman cross that road that leads to the school and get in that grass area." According to Skeens, Reed never left the grassy ditch line "until he crossed over," and that he "flipped [his] hood up" on his sweatshirt as he got closer to the entrance to the school. Skeens testified that he never saw Reed touch or handle his firearms as he walked, but also that he "[n]ever saw the pistol" at all.

Reed also admitted into evidence a deed stating that the ditch line in front of the school is owned by the Commonwealth in fee simple absolute.

At the close of all the evidence, the trial court found Reed guilty of one count of felony possession of a firearm on school property, one count of felony brandishing a firearm on school property, and one count of misdemeanor disorderly conduct. It concluded that Reed was on school property while possessing his firearms because "there's a marquee that crosses on to that property that's used exclusively for Fort Chiswell High School," and the school maintained the ditch line area. The trial court further found that Reed's conduct constituted "brandishing" a firearm because, under *Huffman v. Commonwealth*, 51 Va. App. 469, 472 (2008), brandishing is "not necessarily to point at someone but to cause apprehension[,] and based on the witnesses [the

_____

[4] From our review of Skeens's testimony, it is unclear where Reed is claimed to have "crossed over." We acknowledge the assertion contained in Reed's brief that Skeens "testified Reed never left the ditchline [sic] until he crossed Route 52 to go to the other side of the road, away from the school." Nevertheless, Skeens's testimony does not clearly state that Reed "crossed over" away from the school.

- 6 -

court heard] from Mr. Henley, Mr. Vaught, and Mr. Souma, [Reed's conduct] caused apprehension as to the students and faculty and officers located there."

The trial court sentenced Reed to 5 years' incarceration for both felony convictions and 12 months for the misdemeanor conviction, suspending all but 6 months of active incarceration. Reed appeals.

ANALYSIS

I.  Standard of Review

We begin our analysis by engaging with familiar principles of appellate review.  It is well established that "[t]he judgment of the trial court, sitting without a jury, is 'entitled to the same weight as a jury verdict.'" *Tomlin v. Commonwealth*, 302 Va. 356, 365 (2023) (quoting *Cole v. Commonwealth*, 294 Va. 342, 361 (2017)).  This is because "in a bench trial, a 'trial judge's major role is the determination of fact, and with experience in fulfilling that role comes expertise.'" *Id.* at 366 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 327 (2018)).  Indeed, "[i]n both bench and jury trials, 'we review factfinding with the highest degree of appellate deference.'" *Id.* (quoting *Bowman v. Commonwealth*, 290 Va. 492, 496 (2015)).  Thus, in a challenge to the sufficiency of the evidence, this Court's role is a limited one.  *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024).  We presume a trial court's judgment correct and do not disturb it "unless [the judgment] is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680).

On appeal, this Court is tasked with determining, "after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)).  If there is evidentiary support for the conviction, a trial court's judgment stands. *McGowan v.*

*Commonwealth*, 72 Va. App. 513, 521 (2020). However, "[t]o the extent our analysis of the sufficiency of the evidence requires us to examine the statutory language, we review issues of statutory construction *de novo* on appeal." *Miller v. Commonwealth*, 64 Va. App. 527, 537 (2015).

"[W]hen construing a statute, our primary objective is 'to ascertain and give effect to legislative intent,' as expressed by the language used in the statute." *Shifflett v. Commonwealth*, 81 Va. App. 277, 289 (2024) (en banc) (alteration in original) (quoting *Diaz-Urrutia v. Commonwealth*, 77 Va. App. 182, 190 (2023)). We begin by "applying the plain meaning of the words unless they are ambiguous or would lead to an absurd result." *Wright v. Commonwealth*, 278 Va. 754, 759 (2009). "Words are ambiguous if they admit to 'being understood in more than one way[,]' . . . refer to 'two or more things simultaneously[,]' . . . are 'difficult to comprehend,' 'of doubtful import,' or lack 'clearness and definiteness.'" *Auer v. Commonwealth*, 46 Va. App. 637, 645 (2005) (alterations in original) (quoting *Gilliam v. Commonwealth*, 21 Va. App. 519, 522 (1996)). When "the language of a statute is *unambiguous*," however, "we are bound by its plain meaning." *Taylor v. Commonwealth*, 298 Va. 336, 341 (2020) (emphasis added) (quoting *Conyers v. Martial Arts World of Richmond, Inc.*, 273 Va. 96, 104 (2007)). Further, when a statute leaves a particular word undefined, we are to give the word its ordinary meaning. *Auer*, 46 Va. App. at 645. Recognizing these principles, we consider each of Reed's challenges in turn.

## II. Possession of a Firearm on School Property

Reed challenges the sufficiency of the evidence to support his conviction for possession of a firearm on school property, in violation of Code § 18.2-308.1(B). Specifically, Reed argues that, because the evidence established that he was primarily walking a ditch line that is property of the Commonwealth, he "[o]bviously" did not violate Code § 18.2-308.1(B)(i). He further

- 8 -

argues that he did not violate Code § 18.2-308.1(B)(ii) because there were no school functions or activities taking place in the ditch line.

In part, Code § 18.2-308.1 prohibits an individual's knowing possession of a firearm

> while such person is upon (i) the property of any child day center or public, private, or religious preschool, elementary, middle, or high school, including buildings and grounds; [or] (ii) that portion of any property open to the public and then exclusively used for school-sponsored functions or extracurricular activities while such functions or activities are taking place.

Code § 18.2-308.1(B). Though the statute specifies that school "property . . . includ[es] buildings and grounds," it does not define the term "grounds." "When a 'statute's terms are undefined' by the legislature, the Court gives those terms 'their "ordinary meaning," in light of "the context in which [they are] used."'" *Green v. Commonwealth*, 72 Va. App. 193, 203 (2020) (alteration in original) (quoting *Va. Marine Res. Comm'n v. Chincoteague Inn*, 287 Va. 371, 384 (2014)). "In ascertaining such meaning, dictionary definitions and pertinent analysis in prior cases may be consulted." *Id.*

"Grounds" is ordinarily defined as "land surrounding or forming part of a house or another building" and "[a] surrounding area." *Grounds*, *American Heritage Dictionary* (5th ed. 2011). Therefore, in the context of Code § 18.2-308.1(B), the term "buildings and grounds" refers to the buildings that constitute the school and the real property.

This definition is consistent with other portions of the statute. *See Street v. Commonwealth*, 75 Va. App. 298, 306 (2022) ("[T]he court must 'examine a statute in its entirety, rather than by isolating particular words or phrases.'" (quoting *Schwartz v. Commonwealth*, 45 Va. App. 407, 450 (2005))). For example, subsection (C) of the statute heightens the penalty for violation if a person knowingly possesses a firearm *within* a school building. *See* Code § 18.2-308.1(C). Subsection (E) provides an exception for the prohibition against firearms when a person with a valid concealed carry permit possesses a firearm in a

vehicle while "in a parking lot, traffic circle, or other means of vehicular ingress or egress to the school." Code § 18.2-308.1(E)(vii). By this exception, the legislature recognizes that a means of ingress and egress to a school necessarily constitutes school grounds under the statute. Put differently, recognizing school grounds to include the real property area surrounding the school buildings comports with the framework of Code § 18.2-308.1 as a whole. *See Ducharme v. Commonwealth*, 70 Va. App. 668, 677 (2019) ("We have a 'duty to interpret the several parts of a statute as a consistent and harmonious whole so as to effectuate the legislative goal.'" (quoting *Colbert v. Commonwealth*, 47 Va. App. 390, 395 (2006))).

Here, the evidence supported a finding that Reed was on school grounds. Reed was seen walking on the driveway of the school with an AR-15 styled rifle and a Sig Sauer pistol. Several witnesses testified that, to their observation, Reed was walking "in that grassy area of the school," "on the school property," "on the front lawn of the school property," and "in the initial driveway of the school." Principal Souma and Sergeant Vaught each testified that they saw Reed on school grounds.

Moreover, Henley, the ambulance driver, and Skeens, the transportation director, each testified that they observed Reed walk across the "initial driveway"[5]—or right-of-way—between the teachers' parking lot, through which the school bus lane passed, and U.S. Highway 52. Indeed, all the eyewitnesses testified that Reed appeared to be on school grounds.

Reed's witness, Clement, a surveyor, testified that the property on which the other witnesses saw Reed walking is property owned by the Commonwealth. Our deferential review of evidence on appeal requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth

---

[5] Skeens referred to the right-of-way as the "entrance to the school" and the "road that leads to the school."

and all fair inferences to be drawn therefrom." *Commonwealth v. Cady*, 300 Va. 325, 329 (2021) (quoting *Perkins*, 295 Va. at 324). Yet "[t]he trier of fact . . . 'may not arbitrarily disregard uncontroverted evidence of [an] unimpeached witness[] which is not inherently incredible and not inconsistent with facts in the record.'" *Hankerson v. Moody*, 229 Va. 270, 274 (1985) (quoting *Cheatham v. Gregory*, 227 Va. 1, 4 (1984)). And because a trier of fact may not disregard such uncontroverted evidence, neither may this Court.

Clement's testimony neither contradicts nor diminishes the testimony of the Commonwealth's witnesses. Clement testified that a portion of the school's driveway encroaches upon property owned in fee simple by the Commonwealth. Nonetheless, we hold that, under Code § 18.2-308.1(B), the driveway constitutes school property. The school driveway served as a means of egress for school buses, and the sole means of ingress and egress for the teachers' parking lot. Considering these facts, and in adherence to the appropriate standard of review, we cannot say that the trial court was plainly wrong or without evidence to support its finding. Because we hold the evidence sufficient to support a finding that Reed

possessed firearms on school property in violation of Code § 18.2-308.1(B), we affirm the

judgment of the trial court.[6]

### III.  Brandishing a Firearm

Reed contends that the Commonwealth's evidence was insufficient to sustain his

conviction under Code § 18.2-282(A) because Reed did not "point, hold or brandish" a firearm

in a manner violative of the statute.  Specifically, Reed argues that he only "carried" the firearms

and did not point, hold, or brandish "a firearm as the term 'brandish' has been defined and

applied in Virginia case law."  Accordingly, he contends that the trial court erred.  We disagree.

We begin by engaging the same principles of appellate review previously noted.  In

particular, we consider our limited role in the context of Reed's challenge: we presume the

correctness of the trial court's judgment and determine whether there is *any* evidence to support

it.  *See Garrick*, 303 Va. at 182.  It is our obligation to apply this generous standard in reviewing

trial court findings, and one of even greater import when the record is—as is the case here—

susceptible of varying and conflicting interpretations.

---

[6] It appears from the record that the trial court convicted Reed under Code § 18.2-308.1(B)(ii).  In rendering judgment, the trial judge stated,

> The court's going to find . . . you were on school property here in Wythe County, Virginia.  The [c]ourt makes that on this as your attorney pointed out if you look at sub-paragraph B of that.  The [c]ourt's going to find that . . . on the portion that you were walking on was open to the public but it was also used exclusively for school functions.

We hold, for a different reason, that the trial court did not err.  Under the "right-result-different-reason principle," we may sustain a trial court's judgment "where the correct conclusion has been reached but [a different] reason [is] given."  *Vandyke v. Commonwealth*, 71 Va. App. 723, 731 (2020) (alterations in original) (quoting *Banks v. Commonwealth*, 280 Va. 612, 617 (2010)).  Further, the doctrine of judicial restraint obligates us to decide cases "on the best and narrowest grounds."  *Butcher v. Commonwealth*, 298 Va. 392, 396 (2020).  Thus, we do not address Reed's argument concerning Code § 18.2-308.1(B)(ii).

- 12 -

Code § 18.2-282(A) provides, in relevant part, that "[i]t shall be unlawful for any person to point, hold or brandish any firearm . . . in such manner as to reasonably induce fear in the mind of another." The statute further states that if "the violation occurs upon any . . . middle or high school, including buildings and grounds or upon public property within 1,000 feet of such school property," the offense is a felony.[7] *Id.*

The plain language of Code § 18.2-282(A) is clear and unambiguous. By its terms, the statute prohibits specific manners of possessing a firearm while in close proximity to a school. As our Supreme Court has previously recognized, the two primary elements of the offense are (1) pointing, holding or brandishing a firearm, and (2) doing so in such a manner as to reasonably induce fear in another. *See Kelsoe v. Commonwealth*, 226 Va. 197, 198 (1983) (interpreting a prior version of Code § 18.2-282). Here, the only question before the Court concerns whether Reed, in carrying an AR-15 styled rifle strapped to his back and a Sig Sauer pistol holstered on his hip, "brandished" either or both firearms in violation of the statute.[8]

The statute itself does not define the term "brandishing." But our Supreme Court has previously held that, in the context of Code § 18.2-282, to "'[b]randish' means 'to exhibit or expose in an ostentatious, shameless, or aggressive manner.'" *Morris v. Commonwealth*, 269 Va. 127, 135 (2005) (quoting *Brandish*, *Webster's Third New International Dictionary* (1993)). One need not physically touch a firearm to brandish it. *See id.* at 130, 135 (affirming

---

[7] Reed does not dispute that he was within 1,000 feet of school property.

[8] In her brief, the Commonwealth only discusses whether Reed's conduct constituted brandishing. Rightly, the Commonwealth does not, on appeal, maintain that Reed "held" the firearms, as the plain and ordinary meaning of the word "hold" involves some measure of grasping or seizure of an object with the hands, fingers, or arms. *See, e.g.*, *Hold*, *American Heritage Dictionary*, *supra*; *Grasp*, *Merriam-Webster's Dictionary* (2025). Neither does the Commonwealth—here on appeal nor did she at trial—argue that Reed's conduct constituted "pointing." Our review of the record indicates that at all relevant times, Reed's firearms were carried on his person, but not in his hands.

brandishing conviction where appellant "stood up, 'raised his shirt,'" and showed a witness the gun in his waistband).

To determine whether Reed brandished a firearm, one must consider the entirety of the circumstances. *Id.* First and foremost, Reed possessed both firearms within 1,000 feet of school property, a fact he does not dispute. Indeed, at one point, Reed even crossed onto school property with the firearms. Both the middle and high schools were in session and children were in their classrooms when, at 11:30 a.m., a parent first reported Reed walking near the school with two firearms. When Sergeant Vaught and Deputy Goins went to confront Reed, they observed him walking just north of the school property and carrying two firearms. Although the officers attempted to engage with Reed, Reed ignored them. A little over three hours later, Reed returned to walk in front of the property again—including across the school driveway—with both firearms still strapped and holstered to his person. According to witness testimony, the school day was coming to an end and the students would soon be released when law enforcement fielded more phone calls regarding Reed's presence in front of the school. When the Tact Team finally apprehended Reed, he stated "I was trying to prove a point, but I guess I f***ed up." Taken together, we cannot say that the trial court's conclusion that Reed was brandishing a firearm was plainly wrong or without evidence.

Reed argues that the trial court "expanded the behavior prohibited by [Code § 18.2-282(A)] to include the open carry of a handgun in a holster and a rifle on a sling where there was evidence that such open carry caused fear or apprehension." To be sure, to criminalize merely carrying or possessing a firearm on one's person would be inconsistent with the longstanding principle that the Second Amendment protects an individual's right to carry a firearm for purposes of self-defense. *See Digiacinto v. Rector & Visitors of George Mason Univ.*, 281 Va. 127, 134 (2011). To that end, we also recognize that to "open carry" a firearm

necessarily involves its exhibition or exposure. *See Farhoumand v. Commonwealth*, 288 Va. 338, 355 (2014) (McClanahan, J., concurring in part and dissenting in part) ("'Expose' is defined as to 'lay open to view[,] lay bare[,] make known[,] exhibit.'" (alterations in original) (quoting *Expose*, *Webster's Third New International Dictionary*, *supra*)); *see also Moses v. Commonwealth*, 45 Va. App. 357, 372-73 (2005) (en banc) (Benton, J., dissenting) ("'Expose' . . . includes the following definitions: 1) to put or bring out into the open, or 2) to put or show on display . . . 'To show publicly; to display; to offer to the public view.'" (quoting *Siquina v. Commonwealth*, 28 Va. App. 694, 697-98 (1998))).

Pointing, holding, or brandishing a firearm, alone, is not the behavior proscribed by the statute. Rather, the proscribed behavior is doing so "in such manner as to reasonably induce fear in the mind of another."[9] Code § 18.2-282(A). *See McKeithen v. City of Richmond*, 302 Va. 422, 435 n.2 (2023) ("[W]hen statutory language is susceptible of multiple interpretations, a court may shun an interpretation that raises serious constitutional doubts and instead may adopt an alternative that avoids those problems." (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 286 (2018))).

Here, a factfinder could conclude that Reed did more than merely carry or possess the firearms. He paraded immediately in front of a school while it was in session and students were present, while also carrying an assault rifle strapped to his back. In response, the school administrators placed the school on lockdown. Reed ignored law enforcement officers' attempts to confront him about his presence and his firearms. He walked away.

---

[9] There is no dispute on appeal that Reed's conduct reasonably induced fear in the minds of others. Indeed, in Reed's own words, "It is reasonable to assume that observing the open carrying of firearms in any location may cause some individuals to be concerned or apprehensive." Because Reed does not challenge this element, we need not address it. *Cf. Banks v. Commonwealth*, 67 Va. App. 273, 289 (2017) ("This Court is limited to reviewing the assignments of error presented by the litigant.").

- 15 -

*And then he came back.* Reed chose to return to the school at the end of the school day, shortly before the students were to be released. According to witness observations, when he returned, Reed followed the same path he took the first time: straight across the ditch line in front of the school, including across the school driveway. Except that during this second parade, Reed was observed pulling up the hood of his sweatshirt "as he . . . crossed over . . . the entrance to the school"—an act consistent with obscuring identity or menacing behavior. And perhaps most significantly, when Reed was arrested, he stated, "I was trying to prove a point, but I guess I f\*\*\*ed up." Reed's statement ties together all his actions to that point, and the inferences to be drawn from them, with a string of intentionality. A reasonable factfinder could conclude that by twice walking in very close proximity to the school while visibly armed (including with an assault rifle)—once just before the scheduled school release—pulling his hood up, being aware that law enforcement was paying attention to him, and "trying to prove a point," Reed exhibited or exposed his firearms in an ostentatious, shameless or aggressive manner.

Reed would attempt to distinguish his case from *Morris*, but his effort fails. Both Reed and Morris called attention to their firearm possession in a shameless manner. Morris approached a tombstone engraver and his wife in a cemetery. *Morris*, 269 Va. at 130. He sat on a tombstone and stared at the engraver and his wife, cursing and mumbling for several minutes. *Id.* Then, Morris looked at the engraver's wife and said, "I'd like that." *Id.* When the engraver asked Morris what he said, Morris "pulled up his shirt to uncover [a] flare gun" in his waistband. *Id.* at 130, 135. As we state, *supra*, it is not unlawful to merely exhibit or expose a gun, even in a waistband. Rather, in holding the evidence sufficient to support the trial court's finding, our Supreme Court considered not merely Morris's possession of the gun, but also his conduct in *calling attention to* his possession of the gun by his words and his actions: "When Morris looked at [the engraver's wife], said '[he'd] like that,' and then pulled up his shirt to uncover the flare

gun, he exhibited or exposed the weapon in a shameless or aggressive manner." *Id.* (second

alteration in original). Our Supreme Court held that Morris's conduct in toto—though he did not

touch the flare gun—nonetheless constituted brandishing a firearm. *Id.*

Although Reed made no direct verbal threats to an individual, a factfinder could conclude

that, like Morris, Reed affirmatively conducted himself in a manner to call attention to the

firearms in his possession—the essence of ostentation. *See Ostentatious*, *Webster's Third*

*International Dictionary* (2021) (defining as "attracting attention often by gaudiness or show").

His intent to call attention to his possession was further evinced by his admission: "I was trying

to prove a point." And so he did.

As a "court[] of review, not first view . . . we do not put ourselves in the shoes of a trial

judge." *Commonwealth v. Holland*, ___ Va. ___, ___ (Jan. 16, 2025).[10] In the absence of plain

---

[10] We are compelled to reiterate the standard of review in light of our dissenting colleague's contention that this issue turns on a matter of law. Reed challenges the sufficiency of the evidence on the brandishing charge. As our Supreme Court has recently exhorted:

> An appellate court reviews a lower court's findings of fact "with the highest degree of appellate deference." "[T]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it." Thus, when reviewing whether the evidence was sufficient to convict a defendant of a criminal offense, an appellate court has a "limited" role, and "[t]he only relevant question is . . . whether *any* rational trier of fact could have *found* the essential elements of the crime beyond a reasonable doubt."

*Commonwealth v. Wilkerson*, ___ Va. ___, ___ (Feb. 20, 2025) (alterations in original) (second emphasis added) (first quoting *Barney*, 302 Va. at 96; and then quoting *Garrick*, 303 Va. at 182). We extend a recent illustration by the Court: "Put 10 jurists in the same courtroom on [the same day], hearing the same argument and considering the same legal principles," listening to the same testimony and reviewing the same exhibits. *Holland*, ___ Va. at ___ (using this hypothetical in the context of the abuse of discretion standard). Unless not one of the ten could have found the essential elements of the offense beyond a reasonable doubt, we must defer to the trial court's finding. This proposition is the fulcrum of our deferential standard. And where we have veered from it, our judgment has been reversed. *See, e.g.*, *Wilkerson*, ___ Va. at ___ (reversing Court of Appeals of Virginia and entering final judgment); *Holland*, ___ Va. at ___ (same); *Barney*, 302 Va. at 102-03 (same); *Garrick*, 303 Va. at 187 (same).

error, we must leave a trial court's finding undisturbed. This Court is obligated, even, to draw from the bottom of the evidentiary well—shallow though it may run—*any* evidence supporting a trial court's conclusion. In this instance, there is evidence sufficient to sate. Because we hold the evidence sufficient to support a finding that Reed brandished a firearm in violation of Code § 18.2-282(A), we affirm the judgment of the trial court.

CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

*Affirmed*.

Frucci, J., concurring in part and dissenting in part.

I concur with the majority's judgment and analysis that the evidence was sufficient to convict Reed of possessing firearms on school property in violation of Code § 18.2-308.1. However, I disagree with the majority's analysis and conclusion that a rational trier of fact could have found the essential elements of the brandishing a firearm on school grounds offense beyond a reasonable doubt. Therefore, I respectfully dissent from the portion of the majority's decision regarding Code § 18.2-282.

Code § 18.2-282(A), in pertinent part, states that "[i]t shall be unlawful for any person to point, hold or brandish any firearm . . . in such manner as to reasonably induce fear in the mind of another of being shot or injured."[11] As such, "there are two elements of the offense [of brandishing a firearm]: (1) pointing or brandishing a firearm, and (2) doing so in such a manner as to reasonably induce fear in the mind of a victim." *Huffman v. Commonwealth*, 51 Va. App. 469, 472 (2008).[12] "Brandish" means to "exhibit or expose in an ostentatious, shameless, or aggressive manner." *Morris v. Commonwealth*, 269 Va. 127, 135 (2005) (quoting *Webster's Third New International Dictionary* 268 (1993)).

The majority incorrectly finds the evidence sufficient to support Reed's brandishing a firearm conviction by overfocusing on Reed's location rather than addressing his actions within the context of the statute. The record does not show any evidence that Reed pointed the

---

[11] The statute provides that "if the violation occurs upon any public, private or religious elementary, middle or high school, including buildings and grounds or upon public property within 1,000 feet of such school property, [the violator] shall be guilty of a Class 6 felony." Code § 18.2-282(A). As the majority correctly points out, Reed does not contest that his was within 1,000 feet of school property.

[12] The trial court relied on *Huffman* in rendering its decision that Reed's actions violated the statute; however, I would note that the defendant in *Huffman* did not challenge that he brandished a firearm, leading the *Huffman* opinion to only address whether the evidence was sufficient to prove the second element.

firearms, made any threats to any individuals around him, exposed a previously hidden firearm, or exhibited the firearms in an ostentatious, shameless or aggressive manner. Rather, Reed kept the rifle slung on his back and the pistol in a hip holster.[13] While the majority acknowledges that "to criminalize merely carrying or possessing a firearm on one's person would be inconsistent with the longstanding principle that the Second Amendment protects an individual's right to carry a firearm for purposes of self-defense," it nonetheless does exactly that by finding the evidence sufficient to support Reed's conviction without any evidence that he did more than merely carry lawful firearms.

As such, I would find the evidence insufficient to support Reed's brandishing a firearm on school property conviction and would reverse the trial court's judgment in regard to that conviction.

---

[13] The majority claims that this case is not distinguishable from *Morris v. Commonwealth*, 269 Va. 127, 135 (2005). However, while the majority correctly notes the significance in the defendant's conduct in "calling attention to his possession of a gun," they ignore that the conduct at issue in *Morris* was the defendant, while in a heated argument with the victims, looking at the female victim and stating, "[he'd] like that," exposed a previously hidden firearm tucked in his waistband. This aggressive behavior, including the exposure of a firearm, are all absent from the case at hand, making it readily distinguishable.